UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
DAVID MCDONALD,                )
                               )
          Plaintiff,           )
                               )
     v.                        )     Civil Action No. 08-1696 (RWR)
                               )
KEN SALAZAR et al.,            )
                               )
          Defendants.          )
_____)
```

MEMORANDUM OPINION

Plaintiff David McDonald, an employee of the United States Park Police ("USPP"), brings claims against the Secretary of the Interior and USPP employees Diana Smith, Philip Beck, and Warren Boyer,[1] alleging violations of McDonald's Fourth and Fifth Amendment rights, a hostile work environment, and retaliation. Defendants have filed a motion to dismiss the amended complaint, arguing that McDonald's claims are untimely, that special factors counsel hesitation in creating a remedy for McDonald's alleged constitutional violations, and that the defendants are entitled to qualified immunity. Although McDonald's claims are timely, he has failed to state a Fifth Amendment due process claim, the defendants are entitled to qualified immunity on his Fourth Amendment claim, and the existence of a comprehensive remedial

---

[1] Another defendant, John B. Farrell, has been dismissed from the case.

scheme for allegations by federal employees of employment discrimination precludes his hostile work environment and retaliation claims. Therefore, the defendants' motion to dismiss will be granted.

BACKGROUND

The amended complaint and materials it refers to set forth the following background and allegations. McDonald, a black male, has served as an officer with the USPP, an entity within the Department of the Interior, for fifteen years. (Am. Compl. ¶¶ 4-5.) McDonald filed equal employment opportunity ("EEO") complaints alleging that Beck, a white male and the commanding officer in McDonald's district, discriminated and retaliated against him. (Id. ¶ 6.) On May 26, 2006,[2] Beck held a meeting in his office with McDonald. McDonald believed that Beck planned to discipline him at the meeting, and he brought with him a tape recorder, which he placed in his shirt pocket. (Id. ¶ 7.) At the conclusion of the meeting, McDonald began to leave the room, but Beck ordered McDonald not to leave and to provide to Beck the object in McDonald's shirt pocket. Beck "physically blocked his office door[.]" (Id.) McDonald repeatedly refused to furnish the object and, in response to Beck's question asking whether the object was a tape recorder, denied that it was one. (Id.; Defs.'

_____

[2] USPP's Notice of Proposed Removal (Defs.' Mot. to Dismiss Compl., Ex. 1 ("Notice")) lists the date of the incident as May 24, 2006.

Mot. to Dismiss Compl., Ex. 1, Notice of Proposed Removal ("Notice") at 1-2.)[3] Beck summoned other officers to the room, one of whom threatened to strip search McDonald. (Am. Compl. ¶ 7.) McDonald then requested union representation, and once a representative arrived, Beck ordered McDonald to remove his jacket, gun belt, and boots. (Id. ¶¶ 8-9.) Boyer physically searched McDonald's person. When ordered to empty his pockets and socks, McDonald removed the tape recorder, concealed in a brown case.[4] Beck ordered McDonald to surrender his badge, gun, credentials, and the keys to his home-to-work vehicle. (Id. ¶ 9.)

After the incident in Beck's office, the USPP placed McDonald on administrative leave. McDonald later returned to work on restricted duty, assigned to the USPP's Brentwood Auto Shop, cleaning and stripping decals from police vehicles instead of engaging in his former policing duties. (Id. ¶ 10.) On April 8, 2008,[5] Smith, Commander of the Office of Professional

---

[3] According to the Notice, Beck saw a red light activate from inside McDonald's shirt pocket whenever there was conversation. (Notice at 1.)

[4] According to the Notice, a sergeant had seen McDonald move a case from an upper pocket to his pants. Boyer asked McDonald what had been in his shirt pocket. McDonald replied it may have been a cell phone. However, McDonald did not have a cell phone. (Notice at 2-3.)

[5] The Notice appears to have been issued on April 3, 2008 rather than April 8, 2008 as the amended complaint avers.

Responsibility, proposed removing McDonald from employment for
his lack of candor and failure to follow a direct order.  (Id.
¶ 11; Notice at 1.)  The Notice alleges that McDonald's conduct
was "in violation of G.O. 32.03, II, 22, which states, in part,
'An officer shall promptly obey all lawful orders issued by a
superior officer.'"  (Notice at 5.)  The Notice also alleges that
McDonald violated "General Order (G.O.) 32.03, II, section 26,
which states, 'It is the duty of a subordinate officer to respond
truthfully to questions asked by a supervisor in connection with
matters relating to the official business of the Force.'"  (Id.
at 5.)

On October 2, 2008, McDonald filed this suit alleging
violations of his Fourth and Fifth Amendment rights under Bivens
v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971) (Pl.'s
Opp'n to Defs.' Mot. to Dismiss Am. Compl. ("Pl.'s Opp'n") at 4),
and seeking legal and equitable relief and attorney's fees.[6]  He
claims that the defendants unreasonably searched and seized him,
removed him from his duties without procedural or substantive due

---

[6] Although McDonald's amended complaint does not make clear
whether he is asserting claims against the defendants in their
official capacities, it will be construed as asserting claims for
damages against the defendants in only their individual
capacities, since Bivens actions are brought against federal
officials in their individual, not their official, capacities,
and sovereign immunity bars suits for money damages against
officials acting in their official capacities absent a specific
waiver by the government.  See Clark v. Library of Congress, 750
F.2d 89, 102-03 (D.C. Cir. 1984).

process, deprived him of a liberty interest without a hearing,
and violated his due process rights by creating a hostile work
environment and retaliating against him for filing prior EEO
complaints. (Am. Compl. ¶¶ 13, 17, 20, 23.) The defendants move
to dismiss, arguing that McDonald's claims are untimely, that
special factors counsel hesitation in creating a remedy for
McDonald's alleged constitutional violations, and that the
defendants are entitled to qualified immunity.[7] (Mem. of P. & A.
in Supp. of Defs.' Mot. to Dismiss Am. Compl. ("Defs.' Mem.") at
7-8.)

## DISCUSSION

In considering a motion to dismiss for failure to state a
claim under Rule 12(b)(6), a court must construe the complaint in
the light most favorable to the plaintiff, Browning v. Clinton,
292 F.3d 235, 242 (D.C. Cir. 2002), and "assume the truth of all
well-pleaded allegations." Warren v. District of Columbia, 353

---

[7] The defendants also argue that there is no personal
jurisdiction over the individual defendants because McDonald
failed to effect proper service of process. However, McDonald
has now properly served all remaining individual defendants.

In addition, the defendants challenge McDonald's claim under
42 U.S.C. § 1988 for attorney's fees. McDonald's amended
complaint does not allege a violation of 42 U.S.C. § 1983, or any
other statutory violation that would entitle a plaintiff to
attorney's fees under § 1988. Therefore, his claim for
attorney's fees under § 1988 will be dismissed. See Ranger v.
Tenet, 274 F. Supp. 2d 1, 6-7 (D.D.C. 2003) ("Because [the
plaintiff] has failed to state a cognizable claim under § 1983,
his claim under § 1988 must fail as well." (footnote omitted)).

F.3d 36, 39 (D.C. Cir. 2004). "[T]he court need not accept
inferences drawn by [a] plaintiff[] if such inferences are
unsupported by the facts set out in the complaint. Nor must the
court accept legal conclusions cast in the form of factual
allegations." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276
(D.C. Cir. 1994); see also Ashcroft v. Iqbal, 129 S. Ct. 1937,
1949 (2009). A plaintiff does not need to plead detailed factual
allegations. Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.,
525 F.3d 8, 16 (D.C. Cir. 2008) (stating that "[i]n general, a
complaint should simply identify the 'circumstances, occurrences,
and events' giving rise to the claim" (quoting Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555 n.3 (2007))). But, enough facts must
be pled to "state a claim to relief that is plausible on its
face." Twombly, 550 U.S. at 570. Documents "appended to [a]
motion to dismiss . . . whose authenticity is not disputed . . .
may be considered . . . [when] they are referred to in the
complaint and are integral to [plaintiff's] claim." Kaempe v.
Myers, 367 F.3d 958, 965 (D.C. Cir. 2004).[8]

---

[8] The USPP Notice of Proposed Removal sent to McDonald, which
was appended to the defendants' motion to dismiss the original
complaint and incorporated into defendant's motion to dismiss the
amended complaint, will be considered. The amended complaint
refers to the proposed removal (Am. Compl. ¶¶ 11, 14), and
McDonald has neither made any arguments against considering the
material nor disputed the authenticity of the material. The
other materials appended by the defendants, namely, McDonald's
outline of his oral response to the assertions made to the notice
of proposed removal and the apparently incomplete transcript of
McDonald's interview with the USPP internal affairs unit will not

I.  TIMELINESS

The defendants argue that McDonald's constitutional claims are untimely because they stem from events that occurred more than one year before he filed suit.  (Def.'s Mem. at 11-12.) "When a federal action contains no statute of limitations, courts will ordinarily look to analogous provisions in state law as a source of a federal limitations period."  <u>Doe v. U.S. Dep't of Justice</u>, 753 F.2d 1092, 1114 (D.C. Cir. 1985).  District of Columbia law therefore provides the appropriate limitations periods for McDonald's <u>Bivens</u> claims.  <u>See</u> <u>Lederman v. United States</u>, 131 F. Supp. 2d 46, 60 (D.D.C. 2001).  Section 12-301 of the D.C. Code provides in relevant part:

> Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues . . .
>
> (4) for libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment -- 1 year; . . .
>
> (8) for which a limitation is not otherwise specially prescribed -- 3 years[.]

D.C. Code §§ 12-301(4), (8).

A proper limitations provision must account for the characteristics of litigation under the analogous federal

---

be considered because they are neither referred to in the complaint nor central to plaintiff's claims.  Moreover, they are not relevant to the inquiry into the objective reasonableness of the defendants' actions for purposes of qualified immunity, discussed below.

statute, including the policies underlying and the practicalities involved in litigating the federal cause of action.  <u>See</u> <u>Burnett v. Grattan</u>, 468 U.S. 42, 50 (1984) (holding that the appropriate state limitations period for civil rights claims must account for the goals underlying the Civil Rights Act).  The defendants, citing <u>Wormley v. United States</u>, 601 F. Supp. 2d 27, 35 (D.D.C. 2009), argue that McDonald's unreasonable search and seizure claims are analogous to false arrest and false imprisonment. (Defs' Mem. at 11.)  "This Circuit has recognized, however, that 'interests respectively protected by federal constitutional law and local assault law are not congruent, and that injuries inflicted by officers acting under color of (legal authority) are significantly different in kind from those resulting from acts of private persons.'"  <u>Lederman</u>, 131 F. Supp. 2d at 61 (alteration in original) (quoting <u>Payne v. Gov't of D.C.</u>, 559 F.2d 809, 817 n.32 (D.C. Cir. 1977)).  In the context of § 1983 claims, the Supreme Court has held that courts should borrow limitations periods from general or residual personal injury actions and not from intentional tort actions because constitutional claims "bear little if any resemblance to the common-law intentional tort." <u>Owens v. Okure</u>, 488 U.S. 235, 249 (1989).  Applying the general or residual limitations period for § 1983 claims best promotes the federal interests in uniformity, certainty, and minimization of unnecessary litigation.  <u>See</u> <u>id.</u> at 240.  These same concerns

underlie <u>Bivens</u> actions.  <u>See</u> <u>Williams v. Hill</u>, 74 F.3d 1339,

1340-41 (D.C. Cir. 1996) (noting that the bodies of law for

§ 1983 and <u>Bivens</u> actions overlap in most respects); <u>Lederman</u>,

131 F. Supp. 2d at 61.

Because "the general limitations provision better accounts

for the goals of a *Bivens* action, namely, to promote uniformity

and finality for potential litigants bringing federal

constitutional claims," <u>Lederman</u>, 131 F. Supp. 2d at 62, the

appropriate limitations period is the three-year period.  <u>See</u>

<u>also</u> <u>Hobson v. Brennan</u>, 625 F. Supp. 459, 467-68 (D.D.C. 1985)

(reasoning that the three-year limitations period is more

appropriate for the complex claims alleged in § 1983, § 1985, and

<u>Bivens</u> actions); <u>Logiurato v. ACTION</u>, 490 F. Supp. 84, 90-91

(D.D.C. 1980) (rejecting contention that plaintiff's allegations

that defendants acting under color of law drugged, repatriated,

and hospitalized the plaintiff against his will are analogous to

the common law torts of assault, false arrest, and false

imprisonment for the purposes of determining the appropriate

limitations period and holding that § 12-301(8) applies to

constitutional torts).[9]  McDonald filed his complaint on

October 2, 2008, alleging <u>Bivens</u> claims based on events that took

place on May 26, 2006.  The three-year period had not expired

_____

[9] <u>But see</u> <u>Wormley</u>, 601 F. Supp. 2d at 35 (finding
plaintiff's <u>Bivens</u> claims analogous to false imprisonment and
false arrest and applying one-year limitations period).

when he filed his complaint, and, therefore, his <u>Bivens</u> claims
are timely.

II.  DUE PROCESS CLAIMS

McDonald claims that the defendants violated his due process
rights by removing him from his duties as a police officer
without procedural due process and denying him a name-clearing
hearing after they defamed him.  (Am. Compl. ¶¶ 17, 20.)
"Whether any procedural protections are due [under the Fifth
Amendment] depends on the extent to which an individual will be
'condemned to suffer a grievous loss.'"  <u>Morrissey v. Brewer</u>, 408
U.S. 471, 481 (1972) (quoting <u>Joint Anti-Fascist Refugee Comm. v.
McGrath</u>, 341 U.S. 123, 168 (1951) (Frankfurter, J., concurring)).
Only after a plaintiff demonstrates a deprivation of a liberty or
property interest does a court determine what procedural
protections are necessary to comport with due process.  <u>See Reeve
Aleutian Airways, Inc. v. United States</u>, 982 F.2d 594, 598 (D.C.
Cir. 1993).

A.  <u>Removal from duties</u>

"To have a property interest in a benefit, a person clearly
must have more than an abstract need or desire for it.  He must
have more than a unilateral expectation of it.  He must, instead,
have a legitimate claim of entitlement to it."  <u>Bd. of Regents v.
Roth</u>, 408 U.S. 564, 577 (1972).  "Property interests are not
created by the Constitution, they are created and their

dimensions are defined by existing rules or understandings that stem from an independent source[,]" <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 538 (1985) (internal quotation and citation omitted), such as a statute or regulation. <u>Doe v. Gates</u>, 981 F.2d 1316, 1320 (D.C. Cir. 1993). Members of the USPP are covered by the Civil Service Reform Act ("CSRA"), Pub. L. 95-454, 92 Stat. 1111 <u>et seq.</u> (codified, as amended, in various sections of 5 U.S.C.). <u>Humberson v. U.S. Attorney's Office for D.C.</u>, 236 F. Supp. 2d 28, 31 (D.D.C. 2003). The CSRA prohibits employers from, among other things, reducing the grade or pay, removing without cause, or suspending for more than fourteen days covered employees. <u>Id.</u> (citing 5 U.S.C. § 7513(a)). While the prohibition on removing an employee without cause means that "Competitive Service employees possess a legitimate expectancy of, and therefore a property interest in, continued federal employment[,] . . . it does not follow that [they have] such an interest in every aspect of [their] job[s], or that the Fifth Amendment protects [them] from employment actions short of those described" in § 7513(a). <u>Id.</u>

Here, McDonald has not pled that the defendants reduced his grade or pay, nor has he pled that the defendants removed him, or that he resigned and that the circumstances constituted a constructive discharge. Moreover, although McDonald pled that the defendants placed him on administrative leave, he has not

pled that the administrative leave lasted for a period longer than fourteen days. (<u>See</u> Am. Compl. ¶ 17.) Because a mere change in duties does not violate the CSRA, McDonald has not established that the defendants deprived him of a property interest by reassigning him to the Brentwood Auto Shop. <u>See</u> <u>Humberson</u>, 236 F. Supp. 2d at 31 (refusing to recognize as a deprivation of a property interest a reassignment that precluded plaintiff from performing certain tasks that he previously performed). <u>Cf.</u> <u>Thompson v. District of Columbia</u>, 530 F.3d 914, 919 (D.C. Cir. 2008) (holding that transferring an employee to a position scheduled for imminent elimination constituted a constructive removal that deprived the plaintiff of a property interest). As such, McDonald has not sufficiently pled that the defendants deprived him of a procedural due process right.[10]

---

[10] McDonald also claims that his reassignment deprived him of substantive due process. (Am. Compl. ¶ 17.) Two situations implicate substantive due process. First, "[s]ubstantive due process rights attach . . . when a fundamental right is involved[.]" <u>Am. Fed'n of Gov't Employees (AFL-CIO) v. United States</u>, 195 F. Supp. 2d 4, 12-13 (D.D.C. 2002); <u>see also</u>, <u>Washington v. Glucksberg</u>, 521 U.S. 702, 720 (1997) (noting that the Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests"). Second, an abuse of executive power that "shocks the conscience" violates substantive due process. <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 846 (1998). McDonald does not allege that the defendants violated a fundamental right, and he offers no authority to support a finding that the facts that he alleges shock the conscience. <u>Cf.</u> <u>Rochin v. California</u>, 342 U.S. 165, 172 (1952) (finding that police officers who illegally broke into the plaintiff's home, struggled to force open his mouth to remove its contents, and later arranged for his stomach to be pumped constituted "conduct that shocks the conscience");

B.  <u>Name-clearing hearing</u>

An individual has a constitutionally protected liberty interest to follow a chosen profession without unreasonable interference by the government.  <u>Trifax Corp. v. District of Columbia</u>, 314 F.3d 641, 643 (D.C. Cir. 2003).  However, "[b]y themselves, charges of government defamation are insufficient to create a liberty interest."  <u>Orange v. District of Columbia</u>, 59 F.3d 1267, 1274 (D.C. Cir. 1995).  Instead, for a plaintiff to demonstrate a liberty interest, he must show that the government's attack on his personal reputation has "achieved in substance an alteration of status that, if accomplished through formal means, would constitute a deprivation of liberty[.]"  <u>Trifax Corp.</u>, 314 F.3d at 644.  This rationale gives rise to the "reputation plus" requirement: a plaintiff must show that the resulting stigma from any harm to his reputation altered his employment status in a tangible way.  <u>Id.</u>  However, a plaintiff cannot demonstrate harm to his reputation in the absence of a public attack on his reputation.  <u>Orange</u>, 59 F.3d at 1274 ("Injury to reputation cannot occur in the absence of public disclosure of the allegedly damaging statements.")

------

<u>Garcia ex rel. Garcia v. Miera</u>, 817 F.2d 650, 656 (10th Cir. 1987) (holding that grossly excessive corporal punishment could be "shocking to the conscience" and "violate substantive due process rights").  Thus, he has not sufficiently pled that the defendants deprived him of substantive due process.

Here, McDonald has not pled facts alleging that the defendants deprived him of a liberty interest that would entitle him to a name-clearing hearing because he has not pled that the defendants made public defamatory statements about him.  McDonald alleges that "[o]n April 8, 2008, Defendant Smith proposed the removal [of] Officer McDonald from employment based on charges of lack of candor and failure to follow instructions."  (Am. Compl. ¶ 11.)  McDonald did not plead to whom Smith made those statements, yet alone that she made those statements publicly. In the absence of such facts, McDonald's allegation that the defendants defamed him is no more than a legal conclusion couched as a factual assertion and fails to state an actionable claim. See Iqbal, 129 S. Ct. at 1949.  As such, McDonald has not sufficiently pled that the defendants deprived him of a liberty interest, such that he is entitled to a name-clearing hearing.[11]

---

[11] Moreover, the Federal Tort Claims Act provides federal officials with absolute immunity for all common law torts committed within the scope of their employment.  28 U.S.C. § 2679(b)(1).  The Chief of the Civil Division of the United States Attorney's Office for the District of Columbia filed a certification, in accordance with § 2679(d), that the defendants were acting within the scope of their employment as employees of the United States at the time of the alleged incident.  McDonald seeks limited discovery to contest the certification (Pl.'s Mem. at 8.), which implies that McDonald's complaint alleges, in addition to a constitutional Bivens claim, a claim of common law defamation committed beyond the scope of federal employment.  To the extent that McDonald's complaint could be construed as alleging a defamation tort under D.C. law, that claim will be dismissed as untimely, since McDonald filed his complaint more than one year after the defendants allegedly made the defamatory statements.  See D.C. Code 12-301(4).

III.  FOURTH AMENDMENT CLAIMS

    A.  <u>Comprehensive remedial scheme</u>

    The defendants argue that the CSRA and the Federal Employees
Compensation Act ("FECA") are comprehensive remedial schemes that
provide remedies for McDonald's Fourth Amendment claims and
foreclose the creation of a <u>Bivens</u> remedy for his alleged illegal
search and seizure.  (Defs.' Mem. at 15-17.)  Courts have the
discretion, in some circumstances, to create a remedy when
federal officials violate constitutional rights, but not when
"'special factors counsel[] hesitation' in doing so."  <u>Wilson v.
Libby</u>, 535 F.3d 697, 704 (D.C. Cir. 2008) (quoting <u>Bivens</u>, 403
U.S. at 396)).  "One 'special factor' that precludes creation of
a *Bivens* remedy is the existence of a comprehensive remedial
scheme."  <u>Id.</u> at 705.  "[C]ourts must withhold their power to
fashion damages remedies when Congress has put in place a
comprehensive system to administer public rights, has 'not
inadvertently' omitted damages remedies for certain claimants,
and has not plainly expressed an intention that the courts
preserve *Bivens* remedies."  <u>Spagnola v. Mathis</u>, 859 F.2d 223, 228
(D.C. Cir. 1988) (per curiam) (en banc) (citing <u>Schweiker v.
Chilicky</u>, 487 U.S. 412 (1988) and <u>Bush v. Lucas</u>, 462 U.S. 367
(1983)).  Because "it is the comprehensiveness of the statutory
scheme involved, not the 'adequacy' of specific remedies extended
thereunder, that counsels judicial abstention[,]" the inability

for a plaintiff to obtain complete relief under a particular
statute is not a sufficient basis for awarding that plaintiff
damages under Bivens. Id. at 227.

    1.   CSRA

The CSRA identifies "prohibited personnel practices" as
"tak[ing] or fail[ing] to take any . . . personnel action if the
taking of or failure to take such action violates any law, rule,
or regulation implementing, or directly concerning, the merit
system principles contained in" the CSRA.  5 U.S.C.
§ 2302(b)(12).  A "personnel action" is any "significant change
in duties, responsibilities, or working conditions[,]" such as a
promotion, transfer, or decision concerning pay or benefits.  5
U.S.C. § 2302(a)(2).  The CSRA is a comprehensive remedial scheme
for federal employees seeking damages from the United States for
prohibited personnel practices that precludes extending a Bivens
remedy to federal employees alleging that personnel actions
violated their constitutional rights.  Bush, 462 U.S. at 368; see
also Spagnola, 859 F.2d at 229-30 (declining to extend Bivens
remedy for damages to federal employees alleging that they were
denied employment opportunities after exercising their First
Amendment rights).  However, Bush stated explicitly that
warrantless searches do not qualify as personnel actions under
§ 2302(a)(2)(A) of the CSRA.  462 U.S. at 385 n.28; see also
Stewart v. Evans, 275 F.3d 1126, 1130 (D.C. Cir. 2002) ("By

noting that a warrantless search is not a 'personnel action[]
. . . covered by this system,' and stating that such a search
does not fall 'within the statutory scheme,' *Bush* virtually
compels the conclusion that the Act does not preclude a *Bivens*
action for a warrantless search" at the plaintiff's office of her
notes about an incident of alleged sex discrimination).  Thus,
the CSRA is not a comprehensive remedial scheme for Boyer's
warrantless search of McDonald.

Neither the Supreme Court nor the D.C. Circuit appears to
have determined explicitly whether warrantless seizures qualify
as personnel actions under the CSRA.  Other courts have
characterized seizures on work premises of employees' property as
personnel actions.  See, e.g., Saul v. United States, 928 F.2d
829, 840 (9th Cir. 1991) (concluding that the CSRA precluded a
Bivens remedy where defendants seized personal mail addressed to
the plaintiff at his office because the defendants' actions were
"work-related"); Plasai v. Mineta, No. 3-03-CV-2996-BD, 3-04-CV-
1477-BD, 2005 WL 1017806, at *3 (N.D. Tex. Apr. 26, 2005)
(reasoning that "the seizure and examination of plaintiff's
computers were clearly related to her status as an . . .
employee" because the defendants "seized the computers from
plaintiff's office as part of an investigation into her alleged
misconduct"); Black v. Reno, No. 99 CIV. 2704 RWS, 2000 WL 37991,
at *12 (S.D.N.Y. Jan. 18, 2000) (concluding that the CSRA barred

plaintiff's "damage claim[] arising from the alleged illegal
. . . seizure at her office" because it arose "from workplace
activities"). However, unlike <u>Saul</u>, <u>Plasai</u>, or <u>Black</u>, neither
<u>Stewart</u> nor <u>Bush</u> drew a distinction between conduct that occurred
on work premises and conduct that occurred off of work premises
for the purpose of determining whether a warrantless search
constituted a personnel action. Moreover, a warrantless seizure
of an employee's person does not fit cleanly within any of the
categories of personnel actions listed in 5 U.S.C. § 2302(a)(2).
A warrantless seizure is hardly akin to a promotion, transfer, or
decision concerning pay or benefits. While a pattern of
warrantless seizures might arguably constitute a significant
change in working conditions, a single incident is too ephemeral
to constitute such a change. Therefore, just as with Boyer's
warrantless search, the warrantless seizure here did not
constitute a personnel action. In sum, the CSRA is not a
comprehensive remedial scheme for the constitutional violations
McDonald alleges, and it does not preclude his claims. <u>See</u>
<u>Spagnola</u>, 859 F.2d at 229 (noting that the CSRA does not preclude
"the exercise of federal jurisdiction over the constitutional
claims of federal employees . . . altogether").

  2. FECA

  The FECA is a comprehensive remedial scheme for "employees'
injuries in federal workplaces." <u>Briscoe v. Potter</u>, 171 Fed.

Appx. 850, 850 (D.C. Cir. 2005).  However, the FECA covers only
mental and physical injuries.  See Lockheed Aircraft Corp. v.
United States, 460 U.S. 190, 193-94 (1983) (drawing analogy
between FECA and workers' compensation legislation).  The FECA
defines an injury to include "in addition to injury by accident,
a disease proximately caused by the employment," 5 U.S.C.
§ 8101(5), and these injuries must result in either disability or
death for a federal employee to qualify for compensation.  5
U.S.C. § 8102(a).

The defendants argue that if McDonald is to claim that his
injuries fall outside of FECA's remedial scheme, he must seek a
determination in the first instance from the Secretary of Labor.
(Defs.' Mem. at 17.)  However, a determination from the Secretary
of Labor is necessary only where the FECA's coverage of an
employee's injuries is ambiguous.  See Zellars v. United States,
578 F. Supp. 2d 1, 5 (D.D.C. 2008) ("When there is ambiguity
regarding whatever claims are covered by FECA, the Secretary of
Labor must determine if it applies."); Daniels-Lumley v. United
States, 306 F.2d 769, 771 (D.C. Cir. 1962) (noting that the
Secretary of Labor need not determine the applicability of FECA
if a plaintiff's injuries are "clearly not compensable under the
[FECA]").  The underlying injury McDonald alleges is an
unreasonable search and seizure.  Unlawful detention constitutes
an injury "irrespective of any physical or mental harm," and is

not covered by the FECA. <u>Tredway v. District of Columbia</u>, 403
A.2d 732, 735 (D.C. 1979) (internal quotation omitted). Courts
disagree whether some non-physical injuries such as a claim of
intentional infliction of emotion distress are covered under the
FECA. <u>See</u> <u>Zellars</u>, 578 F. Supp. 2d at 4 (describing split in
case law). However, McDonald's allegations that he suffered
damages including "emotional distress, embarrassment, anxiety,
fatigue, mental distress, humiliation, illness and damage to his
employment and personal reputation," in addition to economic harm
("lost wages and benefits"), as a result of his search and
seizure, and subsequent removal (Am. Compl. ¶ 15), do not reduce
his claim to one for emotional or mental distress. McDonald's
allegations of search and seizure in violation of the Fourth
Amendment are not amenable to characterization as an "injury by
accident" or a "disease proximately caused by employment" that
could result in either "disability or death." 5 U.S.C.
§§ 8101(5), 8102(a). FECA is therefore not a comprehensive
remedial scheme for the constitutional violations McDonald
alleges, and it does not preclude his claims.

　　B.　<u>Qualified immunity</u>

　　The defendants also argue that they are entitled to
qualified immunity with respect to McDonald's Fourth Amendment
claim. "The doctrine of qualified immunity protects government
officials 'from [personal] liability for civil damages insofar as

their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  To determine if an official is protected by qualified immunity and therefore entitled to dismissal of the claims against him, a court must ask "whether the plaintiff has alleged the deprivation of an actual constitutional right," and "whether that right was clearly established at the time of the alleged violations."  Int'l Action Ctr. v. United States, 365 F.3d 20, 24 (D.C. Cir. 2004) (quotations and citations omitted).  Courts may "exercise their sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand."  Pearson, 555 U.S. at 236.

The second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition. . . .  'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  Saucier v. Katz, 533 U.S. 194, 201-02 (2001) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  A court must determine whether "it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted."  Id. at 202.  Officials are presumed to have knowledge of all developments in constitutional law at the time

the alleged violation occurred.  <u>Harris v. District of Columbia</u>,
932 F.2d 10, 13 (D.C. Cir. 1991).  Ignorance of the law is not a
defense, since a "'reasonably competent public official should
know the law governing his conduct.'"  <u>Barham v. Ramsey</u>, 338 F.
Supp. 2d 48, 55 (D.D.C. 2004) (quoting <u>Harlow</u>, 457 U.S. at 818-
19)).  "[O]fficials can still be on notice that their conduct
violates established law even in novel factual circumstances."
<u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002).  Accordingly, an
official may have fair warning that his conduct deprived the
victim of a constitutional right even if there existed at the
time no case with materially similar facts.  <u>Id.</u> at 739.
However, if an officer makes a reasonable mistake as to the
conduct required by the law under the circumstances, the officer
may be entitled to qualified immunity.  <u>Saucier</u>, 533 U.S. at 205.

Qualified immunity is not merely a defense to liability; it
immunizes the defendant from being sued at all.  <u>Pearson</u>, 555
U.S. at 231; <u>see also</u> <u>Harris</u>, 932 F.2d at 13 ("Qualified immunity
shields government officials performing discretionary functions
from damages stemming from certain allegedly unconstitutional
conduct in order that they not be unduly inhibited in or diverted
from the exercise of their duties by fears of personal monetary
liability and harassing litigation.").  Although qualified
immunity is typically pled by an official as an affirmative
defense, <u>see</u> <u>Harlow</u>, 457 U.S. at 815, whether a defendant is

protected by qualified immunity should be resolved at the earliest stage possible so that the "costs and expenses of trial are avoided where the defense is dispositive." <u>Saucier</u>, 533 U.S. at 200-01. Thus, a defendant may raise the defense in a motion to dismiss. <u>See</u> <u>Behrens v. Pelletier</u>, 516 U.S. 299, 306 (1996) (noting that a defendant who successfully pleads "'qualified immunity is entitled to dismissal before the commencement of discovery.'" (quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985))); <u>Ennis v. Lott</u>, 589 F. Supp. 2d 33, 36-37 (D.D.C. 2008) (stating that "the plaintiff must overcome the qualified immunity defense in order to survive a Rule 12(b)(6) motion to dismiss").

The qualified immunity determination is a question of law, <u>Mitchell</u>, 472 U.S. at 528, and the trial court has an independent obligation to survey the relevant law to determine whether a constitutional right was violated and whether that right was clearly established. Thus, although McDonald cites no case law in opposition to the defendant's assertion of qualified immunity (<u>see</u> Pl.'s Opp'n at 6 (stating only that "Mr. McDonald alleged that armed police officers held him in a room against his will and searched his person without probable cause. This is a violation of a clearly established right.")), inadequate briefing by the plaintiff is not a proper basis for concluding that the defendant is entitled to immunity. <u>See generally</u> <u>Elder v. Holloway</u>, 510 U.S. 510 (1994) (holding that qualified immunity

determination should be conducted in light of all relevant
precedents).  Because the plaintiff casts the right allegedly
violated in general terms, it is "difficult to decide whether
[the] right is clearly established without deciding precisely
what the existing constitutional right happens to be."  Pearson,
555 U.S. at 236 (quoting Lyons v. Xenia, 417 F.3d 565, 581 (6th
Cir. 2005) (Sutton, J., concurring)).  Both prongs therefore will
be discussed in making the qualified immunity determination.

     1.   Violation of a constitutional right

    The standard for evaluating the constitutionality of the
defendants' seizure and search of McDonald depends on the purpose
of defendants' conduct.  Where a police department searches or
seizes one of its officers for the purpose of criminal
investigation, the Constitution requires the intrusion to have a
basis in probable cause.  "Policemen, like teachers and lawyers,
are not relegated to a watered-down version of constitutional
rights."  Garrity v. New Jersey, 385 U.S. 493, 500 (1967).  The
probable cause requirement protects the heightened liberty
interest that criminal investigations implicate, and that liberty
interest is not diminished by an employment relationship between
the government and the subject of a search or seizure.  See
Driebel v. City of Milwaukee, 298 F.3d 622, 640 (7th Cir. 2002)
(holding that "a law enforcement agency needs probable cause to
seize its employees as part of a criminal investigation");

Cerrone v. Brown, 246 F.3d 194, 202 (2d Cir. 2001) (holding that
police officer's "seizure and custodial interrogation for the
purpose of a criminal investigation required probable cause");
United States v. Taketa, 923 F.2d 665, 675 (9th Cir. 1991)
(holding that law enforcement agency "cannot cloak itself in its
public employer robes in order to avoid the probable cause
requirement when it is acquiring evidence for a criminal
prosecution.").

The lower standard of reasonable suspicion applies when the
government seizes or searches an employee as part of an internal,
administrative investigation. See O'Connor v. Ortega, 480 U.S.
709, 725-26 (1987) (plurality opinion) (holding that "public
employer intrusions on the constitutionally protected privacy
interests of government employees for noninvestigatory, work-
related purposes, as well as for investigations of work-related
misconduct, should be judged by the standard of reasonableness
under all the circumstances."). The government's operation of a
police force is akin to "its supervision of probationers or
regulated industries, or its operation of a government office,
school, or prison" in that it "presents special needs beyond
normal law enforcement that may justify departures from the usual
warrant and probable-cause requirements." Skinner v. Railway
Labor Executives' Ass'n, 489 U.S. 602, 620 (1989) (internal
quotations omitted). A basis in individualized suspicion is a

key indicator of the reasonableness of a search or seizure for
internal investigative purposes in the workplace.  The D.C.
Circuit has emphasized that "individualized suspicion goes far
toward making a search reasonable where the government [as
employer] has a legitimate interest in confirming the alleged
violation."  Nat'l Treasury Empls. Union v. Yeutter, 918 F.2d
968, 975 (D.C. Cir. 1990); see also Cerrone, 246 F.3d at 201
(holding that while probable cause is required for criminal
investigation, "lesser standard of individualized suspicion is
permissible . . . in internal disciplinary investigations of
government employees by their government employers.").

The determination as to whether McDonald was seized and
searched as part of an administrative or a criminal investigation
must assess the full context of the encounter.  Guidance from the
Seventh Circuit proves instructive in this regard:

> The determination of whether an officer has been seized
> for the purpose of a criminal or an administrative
> investigation should focus on the totality of the
> circumstances, including: (1) the nature of the
> encounter, its setting, and its preparation; (2)
> whether the police department followed the applicable
> collective bargaining agreement's provisions for
> administrative investigations; and (3) the statements
> made by the questioning detectives.  Driebel, 298 F.3d
> at 640 n.9 (2002) (citing Cerrone, 246 F.3d at 201).

Here, the nature of the encounter was a "meeting," at which
McDonald "belie[ved] that he would be disciplined."  (Am. Compl.
¶ 7.)  In the absence of any additional allegations, the setting
and preparation of the encounter do not support an inference that

McDonald believed he would be subject to a criminal investigation. Further, defendant Beck honored McDonald's request for Union representation and summoned a Union representative to the location. (<u>Id.</u> ¶ 8.) Finally, after defendant Beck blocked McDonald from departing at the conclusion of the meeting, Beck's alleged questioning and commands related solely to Beck's suspicions about the tape recorder in McDonald's pocket (<u>id.</u> ¶¶ 7-9), and did not concern criminal charges. To determine whether the reasonableness or probable cause standard applies, "the crucial question is . . . whether the investigation's objective is to discipline the officer within the department or to seek criminal prosecution." <u>Cerrone</u>, 246 F.3d at 200. The defendants' alleged conduct here reflects the aim of disciplining McDonald.

McDonald, however, arguing in opposition to the defendants' motion to dismiss, characterizes the seizure as an "arrest" (Pl.'s Opp'n at 8), a term that generally implies a seizure for the purpose of a criminal charge or investigation. While a court views the facts alleged in the light most favorable to the plaintiff, a court is not obliged to accept a conclusory legal characterization in the course of subsequent briefing as correct. Moreover, McDonald himself asserted in his opposition that "[t]here was no criminal investigation because Mr. McDonald was never suspected of any crime." (<u>Id.</u>) In addition, the encounter

was not transformed into a criminal investigation just because there is a question about the legality of one party to an oral communication recording that communication without the consent of the other party.  See Myers v. Baca, 325 F. Supp. 2d 1095, 1108 n.6 (C.D. Cal. 2004) (reasoning that "whether the conduct at issue *could* be criminal is not relevant, but instead, if the central purpose of the investigation is to collect information for possible criminal prosecution, then and only then is the probable cause standard relevant.") (emphasis in original).  For the same reason, the defendants' suggestion that probable cause existed to arrest McDonald for making false statements because he lied about having a tape recorder (Defs.' Mem. at 29-30) is of no moment.

Because the facts support the conclusion that the defendants seized McDonald as part of an administrative, not a criminal, investigation, the reasonableness standard applies.  To pass constitutional muster, "both the inception and the scope of the intrusion must be reasonable."  O'Connor, 480 U.S. at 726 (citing Terry v. Ohio, 392 U.S. 1, 20 (1968); New Jersey v. T.L.O., 469 U.S. 325, 341 (1985)).  The O'Connor plurality reasoned that a search of an employee's office would be "'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the employee is guilty of work-related misconduct," and "permissible in its scope when 'the

measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of . . . the nature of the [misconduct].'" Id. (quoting New Jersey v. T.L.O., 469 U.S. at 342). The analysis therefore proceeds in light of the established principle that "[t]he manner in which the seizure and search were conducted is . . . as vital a part of the inquiry as whether they were warranted at all." Terry, 392 U.S. at 28.

Here, McDonald was "seized" within the meaning of the Fourth Amendment when defendant Beck "physically blocked his office door," and ordered McDonald to hand over the tape recorder. (Am. Compl. ¶ 7.) "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980). The "free to leave" inquiry is distinct in an employment situation because "when people are at work their freedom to move about has been meaningfully restricted . . . by the workers' voluntary obligations to their employers." INS v. Delgado, 466 U.S. 210, 218 (1984). To effect a seizure in the employment context, a government agent must, "by means of physical force or show of authority," Florida v. Bostick, 501 U.S. 429, 434 (1991) (quoting Terry, 392 U.S. at 19 n.16 ), constrain an employee's liberty in a manner beyond the normal incidents of the employment relationship. The fact that McDonald

was physically prevented from leaving is a clear step beyond the ordinary limitation on an employee's movements that arises due to a voluntary choice to carry out the duties of a certain job.

Defendant Beck had grounds for reasonable, individualized suspicion for initiating the seizure of McDonald.  McDonald alleged that he "took a tape recorder with him" to his meeting with Beck.  (Am. Compl. ¶ 7.)  When Beck saw the flashing red light in McDonald's shirt pocket and suspected that McDonald had surreptitiously tape recorded their official meeting, McDonald's failure to hand over the object in his pocket as ordered and denial that the object was a tape recorder, reflected insubordination and suggested a lack of candor that in the context of the strict hierarchy of a police force can be characterized as work-related misconduct.  "A police department is a paramilitary organization that must maintain the highest degree of discipline, confidentiality, efficiency, and espirit de corps among its officers[.]"  Driebel, 298 F.3d at 638.  Police officers occupy positions of public trust, and police departments have a legitimate interest in closely supervising their employees and investigating work-related misconduct.  See id. at 648 ("Law enforcement agencies are entitled to deference, within reason, in the execution of policies and administrative practices that are designed to preserve and maintain security, confidentiality, internal order, and esprit de corps among their employees.").

Smith's proposed removal of McDonald was expressly "based on charges of lack of candor and failure to follow instructions." (Am. Compl. ¶ 11.)  The Notice of Proposed Removal explained that "being untruthful is a grave form of misconduct by a Police Officer."  (Notice at 6.)  Defendant Beck had "reasonable grounds for suspecting" that seizing McDonald would "turn up evidence that the employee [was] guilty of work-related misconduct." O'Connor, 480 U.S. at 726.  Blocking the door, at least temporarily, and ordering McDonald to hand over the object in his pocket, were limited intrusions on McDonald's privacy designed to reveal evidence confirming McDonald's failure to be forthright.

However, whether the seizure remained reasonable in scope is a closer question.  Following McDonald's refusal to comply with Beck's order, Beck allegedly "summoned other officers to the room" and "instructed [them] that they were not to allow Mr. McDonald to leave the room."  (Am. Compl. ¶ 7.)  One of the assembled officers told McDonald that they "would strip search him if they had to."  (Id.)  In the course of the seizure, McDonald was not strip searched, but subjected to a search of his person.  He was ordered to remove his jacket, his gun belt, and his boots.  One of the officers conducted a physical search of McDonald.  McDonald was then ordered to remove the contents of his pockets and socks, at which point McDonald produced the tape recorder.  (Id. ¶ 9.)

Despite the initial justification for seizing McDonald, defendants had a less compelling interest in prolonging the seizure and conducting a search of McDonald's person. It is significant that the elements of misconduct identified in the Notice of Proposed Removal, that is, lack of candor and failure to follow a direct order, were established at the early stages of the seizure, once McDonald denied that the object in his pocket was a tape recorder but refused to comply with Beck's repeated order to turn it over. The defendants' options in further dealing with McDonald at that point were limited. The Notice, for example, explains that "[i]f a subordinate officer does not comply with [section 26], the superior officer shall submit a written report of the circumstances." (Id.)

The defendants' actions went far beyond submitting a report of the encounter. The amended complaint does not specifically allege how long the encounter lasted, but the allegations, including summoning additional officers and then a Union representative, permit a reasonable inference that the encounter was protracted. In addition, summoning additional officers, one of whom subsequently threatened to strip search McDonald, amplified the intrusiveness of the encounter. In this case, the reasonableness of the seizure and search are intertwined. The precedent concerning the reasonableness of searches in the context of government employment has generally addressed searches

of an employee's workspace.  While a search of an employee's

person is subject to the same analytical approach, the weight of

the privacy interests and the extent of the intrusion take on

different dimensions.  A government employee possesses "an

expectation of privacy that society is prepared to consider

reasonable" in his person, <u>United States v. Jacobsen</u>, 466 U.S.

109, 113 (1984), whether on the job or off.  To outweigh these

privacy interests, a government employer must have particularly

strong interests and, notwithstanding such interests, the search

must be reasonably proportionate to the suspected work-related

infraction.  Here, where the suspected misconduct was

surreptitiously taping a meeting, defendants may not have had a

sufficiently weighty interest in prolonging their seizure in

order to conduct a physical search aimed at confirming whether

McDonald actually had a recording device.[12]

---

[12] This assessment of the relative interests of Officer
McDonald and his employer relies on the fact that the misconduct
at issue involves using and failing to be forthright about a tape
recorder, and not any other object or contraband.  The
allegations in the complaint do not give rise to a reasonable
inference that defendants were concerned that the object in
McDonald's pocket was anything other than a tape recorder, and
defendants concede as much in their motion to dismiss.  <u>See</u>
Defs.' Mem. at 26 ("Analyzed from the view of a reasonable law
enforcement officer, Plaintiff's Lieutenant would have believed
that Plaintiff possessed a tape recorder, had taped an official
meeting without receiving permission, had refused to tender the
tape recorder when asked for it, and lied about the existence of
the device.").

Ultimately, however, it is unnecessary to find definitively whether the defendants' seizure was "excessively intrusive in light of . . . the nature of the [misconduct]," O'Connor, 480 U.S. at 726, so as to violate McDonald's constitutional rights because the applicable case law does not clearly establish the rights allegedly violated. See, e.g., Mena v. City of Simi Valley, 332 F.3d 1255, 1266 (9th Cir. 2003) (the "analysis used to determine whether a plaintiff alleges a violation of a constitutional right is instructive in determining whether that right was clearly established"). McDonald's constitutional claims may therefore be resolved on the basis of the second prong of the qualified immunity inquiry.

     2.   Whether the right was clearly established

Defendants are charged with knowledge of clearly established principles governing their conduct toward McDonald. But the fact that several cases have established clearly that a government employer may intrude on an employee's privacy where there is a basis in reasonable suspicion and the government action is not excessively intrusive in relation to the suspected misconduct does not, by itself, suffice in order to find that "no reasonable officer could have believed in the lawfulness," Wardlaw v. Pickett, 1 F.3d 1297, 1303 (D.C. Cir. 1993), of the defendants' actions here. "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal

constraints on particular police conduct." <u>Saucier</u>, 533 U.S. at 205.

In determining whether a right is clearly established, this court "looks to cases from the Supreme Court, the D.C. Circuit, and other courts for principles 'exhibiting a consensus view.'" <u>Dormu v. District of Columbia</u>, 795 F. Supp. 2d 7, 23 (D.D.C. 2011) (quoting <u>Johnson v. District of Columbia</u>, 528 F.3d 969, 976 (D.C. Cir. 2008)). The precedent assessing the reasonableness of searches and seizures in the context of government employment has addressed factual situations that do not provide readily applicable guidance for the defendants' search and seizure of McDonald. <u>See, e.g.</u>, <u>O'Connor</u>, 480 U.S. at 726 (search of employee's office); <u>Stewart v. Evans</u>, 351 F.3d 1239, 1243-44 (D.C. Cir. 2003) (search of safe to which employee had access); <u>see also</u> <u>Skinner</u>, 489 U.S. at 624-633 (search of employees by means of mandatory drug testing of employees' blood, urine, and breath); <u>Nat'l Treasury Empls. Union</u>, 918 F.2d at 973-75 (random urinalysis drug testing of employees). One court confronting the Fourth Amendment rights of police officers in an administrative context recognized the unique aspects of the law enforcement context which can make direct application of precedent difficult. <u>See</u> <u>Myers</u>, 325 F. Supp. 2d at 1114. The court noted that "the vast majority of cases involving seizures of persons stem from criminal investigations," <u>id.</u>, and that "[t]he few cases that

discuss non-criminal internal investigations of police officers
often still have significant criminal overtones." Id. (citing
Biehunik v. Felicetta, 441 F.2d 228, 229 (2d Cir. 1971), in which
the officers suspected of misconduct were informed of the
possibility of resulting criminal prosecution). In addition,
"[t]hose cases relating to workplace searches, *see, e.g.,*
*O'Connor*, by non-law enforcement public entities are again
patently distinguishable both because the persons performing the
search are not doing so having authority as peace officers nor
were the persons aggrieved seized for extended periods of time."
Id. The landscape has not notably improved since the court made
those observations. The D.C. Circuit has provided guidance on
whether a seizure has occurred, see, e.g., Feirson v. District of
Columbia, 506 F.3d 1063, 1067-68 (D.C. Cir. 2007) (holding that
police officer was not seized when physically attacked by police
department personnel as part of training), but little in the way
of whether a seizure for the purpose of investigating work-
related misconduct was reasonable.[13]

---

[13] The Myers decision itself is not enough to put defendants
on notice that their conduct was more intrusive than necessary.
In Myers, instructors at the Los Angeles County Sheriff's
Department Academy ordered trainees suspected of cheating to
remain in a room, informed the trainees that they planned to
monitor and videotape them, and prohibited them from
communicating with anyone else. Myers, 325 F. Supp. 2d at 1100.
The court determined that the instructors had seized the
trainees, since a reasonable person under the circumstances would
not have felt free to ignore the police presence and go about his
business, and balanced the nature of the intrusion on the

Here, it does not appear that "[t]he contours" of McDonald's right "[were] sufficiently clear that a reasonable official would [have] underst[ood] that what he [was] doing violate[d] that right." Anderson, 483 U.S. at 640. It was not so clearly unreasonable here for the defendants to believe that their interest in obtaining further confirmation of McDonald's lack of candor and failure to follow orders was sufficiently strong so as to outweigh McDonald's privacy interest in being free from a protracted seizure and physical search of his person. The mere fact that the reasonableness standard involves a context-specific balancing test rather than a bright-line rule does not mean that a government employer can never be expected to accurately apprehend the weight of the respective interests such that the employer can be considered on notice of the permissible scope of a search or seizure. In this case, however, the uniqueness of

trainees against the instructors' interest in preventing the trainees from coordinating their stories to avoid discipline. The court held that the seizure was unreasonable because it was more intrusive than necessary, yet concluded that the instructors were entitled to qualified immunity because it would not have been clear to a reasonable officer that the seizure of the trainees was unreasonable, given the state of the law in the Ninth Circuit at the time of the incident. Id. at 1111, 1116. Even if the Myers decision did provide guidance detailed enough to have aided defendants in calibrating the intrusiveness of their seizure and search of McDonald, a district court opinion from a different circuit is not sufficient evidence of a "consensus view," Johnson, 528 F.3d at 976, on the matter from other circuits.

the law enforcement employment context and the lack of clear case law preclude such an expectation.

In sum, the case law has not established with clarity sufficient to direct defendants' actions either the attributes of reasonable seizures of a police officer or of reasonable searches of an officer's person for investigations of workplace misconduct. Law enforcement officers, as other government employers, must abide by the rule that seizures for the purposes of investigating work-related misconduct must not be unduly protracted in relation to the severity of the suspected misconduct. Qualified immunity nonetheless protects the defendants in this case because at the time McDonald's seizure took place, the case law had not sufficiently clearly established the contours of McDonald's right to be free from an unduly protracted and intrusive seizure.

IV. HOSTILE WORK ENVIRONMENT AND RETALIATION CLAIMS

McDonald alleges that the defendants "violated [his] civil rights" by creating "a hostile work environment[,]" and that they "retaliated against him[.]" (Am. Compl. ¶ 23.) While plaintiffs typically seek relief for discrimination claims of hostile work environment and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., McDonald does not allege a claim under Title VII, styling his claim instead as a "Due Process

violation in employment" for which he argues he is entitled to a
Bivens remedy.[14]  (Pl.'s Opp'n at 6.)

Like the CSRA and FECA, Title VII is a comprehensive
remedial scheme, and it "provides the exclusive judicial remedy
for claims of discrimination in federal employment." Brown v.
GSA, 425 U.S. 820, 835 (1976).  McDonald, citing Davis v.
Passman, 442 U.S. 228, 248 (1979), argues that the Supreme Court
has recognized a Bivens remedy for the violation of a plaintiff's
Fifth Amendment due process right to be free from official
discrimination. (Pl.'s Opp'n at 5.)  However, "*Davis* involved
employment in the office of a member of Congress in a position
outside of Title VII's domain." Kizas v. Webster, 707 F.2d 524,
542 (D.C. Cir. 1983).  "[F]ederal employees may not bring suit
under the Constitution for employment discrimination that is
actionable under Title VII." Ethnic Empls. of Library of Cong.
v. Boorstin, 751 F.2d 1405, 1415 (D.C. Cir. 1985).  McDonald's
allegations that Beck "treated [him] in a discriminatory and
hostile manner" (Am. Compl. ¶ 6), and that he has been "subjected
to a hostile work environment" (id. ¶ 23) at his workplace since
the day of the search are squarely within the purview of

_____

[14] Indeed, McDonald cannot state a claim under Title VII
because he did not plead that he exhausted his administrative
remedies before filing this suit.  See Hines v. Bair, 594 F.
Supp. 2d 17, 22 (D.D.C. 2009) ("Before filing a Title VII suit, a
federal employee must timely pursue [his] administrative
remedies, following the requirements set forth in 29 C.F.R.
§ 1614.").

Title VII.  Because an alternative comprehensive scheme exists, the claims will be dismissed.  <u>See</u> <u>Kittner v. Gates</u>, 708 F. Supp. 2d 47, 54 (D.D.C. 2010) (dismissing <u>Bivens</u> count where "Plaintiff's constitutional claims . . . clearly do challenge the same acts of harassment, discrimination, and retaliation . . . for which Title VII provides the exclusive remedy.").

CONCLUSION

McDonald has failed to state a Fifth Amendment due process claim, the defendants are entitled to qualified immunity on his Fourth Amendment claim, and the existence of a comprehensive remedial scheme for allegations by federal employees of employment discrimination precludes his hostile work environment and retaliation claims.  Thus, the defendants' motion to dismiss will be granted.  A final Order accompanies this memorandum opinion.

SIGNED this 23rd day of December, 2011.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge